El Pueblo de Puerto Rico, demandante y apelado *v.* Pedro F. Gotay, acusado y apelante.

No. 3617.—*Sometido:* Diciembre 14, 1928. *Resuelto:* Junio 19, 1929.

*O'Neill & O'Neill,* abogados del apelante; *José E. Figueras,* abogado de *El Pueblo,* apelado.

El Juez Asociado Señor Wolf, emitió la opinión del tribunal.

El acusado fué convicto del delito de libelo y sentenciado a pagar una multa de $200. En la acusación se alegaba, y la prueba tendió a demostrar que el acusado fué el autor de un artículo publicado en que se imputaba a la Cámara de Representantes, o a los miembros que la constituían, el haber aceptado dádivas que influirían en la votación de una medida que se menciona claramente en dicho artículo.

Durante el juicio el acusado no presentó prueba alguna. No trató de demostrar que las manifestaciones que el perió-

dico contenía eran ciertas, ni que fueran publicadas con sana intención y para fines justificables, según expresa el estatuto. Se fundó la defensa en que la acusación no imputaba un delito castigado por las leyes de Puerto Rico. El único señalamiento de error lee como sigue:

"La Corte de Distrito de San Juan erró al entender y resolver que en Puerto Rico existe el delito de libelo contra clases, dentro de la significación y alcance del artículo 243 del Código Penal vigente."

Los letrados no alegan que en California, de donde ha sido tomado indirectamente nuestro estatuto, las cortes han resuelto que procede una acusación criminal cuando el artículo publicado se dirige contra una clase. Se arguye que el Estado de California siguió al de Kansas, donde prevalece el derecho común inglés, pero que el estatuto escrito no justifica que las cortes de California hayan seguido de ese modo la citada ley común. Además, se alega como defensa que en Puerto Rico, donde tal derecho común nunca ha prevalecido, la sanción del estatuto no debe extenderse a casos no cubiertos por sus propios términos. El apelante cita varios casos para sostener que un estatuto penal debe ser interpretado estrictamente. En resumen, dice el apelante, que si bien sería prudente extender el alcance de la ley de libelo para que comprendiera publicaciones maliciosas contra una clase, la Legislatura hasta el presente no lo ha hecho así.

Ha sido bien establecido que el fin de la ley penal sobre libelo es impedir alteraciones de la paz. Las autoridades que se citarán más adelante se pronuncian en este sentido. No puede haber duda alguna de que al redactarse la ley de libelo de Puerto Rico la intención de la Legislatura necesariamente fué, en tanto en cuanto la fraseología del estatuto lo permite, realizar el mismo fin general para la isla.

Si bien un estatuto que define un delito debe ser interpretado estrictamente a favor del acusado, también es un principio familiar que las cortes deben interpretar un estatuto en sentido tal que supriman el daño y amplíen el remedio.

La intención general no puede ser destruida limitando el significado posible o probable a la más mínima expresión.

Según el caso de *Palmer* v. *Concord,* 48 N. H. 211, 97 A. D. 605, el estatuto concedió un derecho de acción contra la ciudad por la destrucción maliciosa por parte de amotinados, pero exceptuaba el caso en que la destrucción fuese causada por la conducta ilegal o impropia de la persona cuya propiedad fué destruida. En este caso tal persona había imputado cobardía a un cuerpo de soldados. No analizaremos la decisión para ver si la ciudad de Concord demostró que la actuación de los amotinados fué causada por conducta ilegal o impropia, sino solamente para averiguar lo que la corte dijo respecto a la ley de libelo, o sea:

" . . . Los pleitos civiles por libelo pueden ser instituidos solamente fundándose en que el demandante individualmente ha sufrido algún perjuicio. Las acusaciones por libelo son sostenidas principalmente debido a que la publicación de un libelo tiende a alterar la paz, y por consiguiente a perturbar la sociedad en general. Es obvio que un ataque libeloso contra un cuerpo de hombres, aunque no se indiquen los individuos, puede tender tanto, o quizá más, a crear disturbios públicos que un ataque contra un individuo. Y se ha sugerido la duda de si 'el número de personas difamadas no aumente la enormidad del acto.' "

Estos términos fueron repetidos por la Corte Suprema de Kansas en el caso de *State* v. *Brady,* 44 Kan. 435, 9 L.R.A. 606, 21 A.S.R. 296, 24 Pac. 948, al tratarse de un libelo contra una familia. Este es tal vez el caso principal sobre la materia. La corte dijo además: "Es derecho elemental que no es necesario que un libelo se dirija contra determinada persona, sino que puede dirigirse contra una familia o clase de personas, si la tendencia de lo que se publica es promover un tumulto o desorden e incitar a una alteración de la paz."

El Estado de Oklahoma, al igual que el de California, tenía un estatuto sobre libelo infamatorio similar al nuestro y usaba únicamente el singular para definir la persona difamada. La corte de apelaciones criminales del Estado de

Oklahoma hizo un examen extenso de la ley de libelo y citó numerosas opiniones de otras cortes, incluyendo *State* v. *Brady, supra, Crane* v. *State*, 14 Okla. Crim. Rep. 30, 19 A.L.R. 1455, 166 Pac. 1110. Siguiendo a este caso hay una nota muy minuciosa en 19 A.L.R. 1530.

*People* v. *Eastman*, 188 N. Y. 478, 81 N. E 459, 11 Ann. Cases 300, fué también uno de los casos revisados. Casi sin duda alguna New York tenía un estatuto. El Juez Presidente Cullen, como ponente, dijo al revocar las decisiones de las cortes inferiores: ''El fundamento de la teoría por la cual el libelo constituye un delito es que al provocar las pasiones de las personas ofendidas, les incita a la violencia y a alterar la paz pública.'' Esa corte, al igual que otras, creyó que una ley que castigara la difamación de una sola persona abarcaba todo el campo.

Algunos de los casos de California son los siguientes: *People* v. *Turner*, 154 Pac. 134, citando *State* v. *Brady, supra; People* v. *Gordon*, 219 Pac. 486, todos los cuales fueron considerados por la corte inferior.

El artículo 243 de nuestro Código Penal dice así:

''Constituye libelo cualquiera maliciosa difamación expresada por medio de escritos, impresos, signos, láminas, dibujos, u otra forma análoga, tendentes a denigrar la memoria de un difunto, o impugnar la honradez, integridad, virtud o buena fama de un vivo, o publicar sus defectos naturales o supuestos, exponiéndole así al odio, desprecio o ridículo público.''

La forma más sencilla de apreciar el estatuto es considerando que algo que se publica dirigido contra una clase, como un cuerpo legislativo, tiende a ''impugnar la honradez, integridad, virtud o buena fama'' de todos y cada uno de los miembros de la clase difamada. La tendencia de lo publicado era poner en tela de juicio a todos y cada uno de los miembros de la Cámara de Representantes, especialmente en vista de que se mencionaba claramente una medida aprobada por dicho cuerpo legislativo.

Sin embargo, el artículo 559 del Cólegio Penal es más específico. Este dispone que:

"La's voces usadas en este Código en el tiempo presente, incluyen también el futuro; las usadas en el género masculino incluyen el femenino y el neutro, salvo los casos en que tal interpretación resultare absurda; el número singular incluye el plural, y el plural incluye el singular; la palabra 'persona' incluye una corporación así como una persona natural;" etc.

En lo que a números se refiere, no hay duda de que intención del Código Penal fué hacer que la ley de libelo comprendiera no solamente los individuos sino también las clases difamadas, y no vemos razón alguna para dudar de la jurisprudencia de California o de la corte inferior al seguirla.

La sentencia *debe ser confirmada*.